UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA MILEY,

        Plaintiff,

v.                                       **Case No:**

COMCAST OF ARKANSAS/
FLORIDA/LOUISIANA/
MINNESOTA/MISSISSIPPI/           **DEMAND FOR JURY TRIAL**
TENNESSEE, LLC and FMS
INVESTMENT CORP.

        Defendants.
_____/

PLAINTIFF'S COMPLAINT
WITH INJUNCTIVE RELIEF SOUGHT

**COMES NOW**, Plaintiff, **VICTORIA MILEY** ("Ms. Miley" or "Plaintiff"), by and through the undersigned counsel, and hereby sues and files this Complaint and Demand for Jury Trial with Injunctive Relief Sought against Defendants, **COMCAST OF ARKANSAS/FLORIDA/LOUISIANA/MINNESOTA/MISSISSIPPI/TENNESSEE, LLC** ("Debt Owner"), and **FMS INVESTMENT CORP.** ("Debt Collector") (collectively "Defendants"), and in support thereof states as follows:

*Introduction*

1.      This action arises out of an alleged "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendants' violations of the Restrictions on Use of Telephone Equipment, 47 U.S.C. § 227 *et. seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), and the Florida Consumer

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **1** of 22

Collection Practices Act, Fla. Stat. § 559.72 *et. seq.* ("FCCPA"), in attempting to collect such alleged Debt by using an automatic telephone dialing system or an artificial or prerecorded voice to call Ms. Miley's Cellular Telephone after Ms. Miley expressly revoked consent for Debt Owner to place calls to her Cellular Telephone, and by continuing to place calls to Ms. Miley's home telephone despite her request that all calls cease because she had lost her job and could not afford to pay the alleged Debt, which can reasonably be expected to harass Ms. Miley.

### *Jurisdiction and Venue*

2.      This Court has subject matter jurisdiction over the instant case under 28 U.S.C. §1331.

3.      Jurisdiction of this Court also arises under 15 U.S.C. § 1692k (d) and Fla. Stat. § 559.77 (1).

4.      Venue lies in this District pursuant to 28 U.S.C. § 1391 (b), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### *Parties*

5.      Plaintiff, Ms. Miley, was and is a natural person and, at all times material hereto, is an adult, a resident of Duval County, Florida, a "consumer" as defined by 15 U.S.C. § 1692a (3), and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55 (8).

6.      Ms. Miley is the "called party" as referenced in the TCPA, 47 U.S.C. § 227 (b) (1) (A) (iii), for all calls placed to cellular telephone number 904-***-0313 ("Ms. Miley's Cellular Telephone").

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **2** of 22

7.     At all times material hereto, Debt Owner was and is a limited liability company with its principle place of business in the State of PA and its registered agent, C T CORPORATION SYSTEM, located at 1200 South Pine Island Road, Plantation, FL 33324.

8.     At all times material hereto, Debt Collector was and is a corporation with its principle place of business in the State of IL and its registered agent, C T CORPORATION SYSTEM, located at 1200 South Pine Island Road, Plantation, FL 33324.

9.     Further, at all times material hereto, Debt Collector is a "Consumer Collection Agency" as defined by Fla. Stat. § 559.55(3) and/or a "Debt Collector" as defined by Fla. Stat. § 559.55(7) and 15 U.S.C. § 1692a (6).

10.     At all times material hereto, Debt Collector was performing debt collection owed to Debt Owner to satisfy Ms. Miley's alleged debt.

11.     At all times material hereto, Debt Collector was acting within the scope of employee, representative, or agent on behalf of Debt Owner for purposes of collecting Ms. Miley's alleged debt for Debt Owner.

12.     As such, Debt Owner is responsible for the conduct of Debt Collector as its employee, representative, or agent.

13.     Under information and belief, Debt Owner granted Debt Collector access to information and systems that normally would be within Debt Owner's exclusive control, including, but not limited to Ms. Miley's information.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **3** of 22

14.     Under information and belief, Debt Owner allowed Debt Collector to enter Ms. Miley's information into Debt Collector's sales or customer systems.

15.     Under information and belief, Debt Owner gave Debt Collector authority to use the principal's trade name, trademark, or service mark.

16.     Under information and belief, Debt Owner approved, wrote, or reviewed form letters and telephone scripts for Debt Collector to use when contacting Ms. Miley.

17.     Under information and belief, via a contractual relationship between the parties, Debt Owner had control or the ability to control Debt Collector's actions in attempting to collect Ms. Miley's debt on behalf of Debt Owner.

18.     Alternatively, at all times material hereto, Debt Collector and Debt Owner have entered into a contract that establishes an agency relationship between the Defendants.

### *Statements of Fact*

19.     Ms. Miley opened an account with Debt Owner for her personal cable and internet services ("Account").

20.     Sometime thereafter, Ms. Miley lost her job and encountered financial difficulties that caused her to fall behind on her monthly payments to Debt Owner and incurred an outstanding balance owed on the Account ("Debt").

21.     In or around July of 2016, Debt Owner began placing calls to Ms. Miley's Cellular Telephone in attempts to collect the Debt.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **4** of 22

22.     Ms. Miley answered several of Debt Owner's first few calls and informed Debt Owner that she had lost her job, had no money to pay Debt Owner, and demanded that Debt Owner stop calling her Cellular Telephone.

23.     Ms. Miley also answered several of Debt Owner's calls to her Cellular Telephone that used a prerecorded voice and pressed "1" to opt-out of Debt Owner's continued calls to her Cellular Telephone.

24.     Despite Ms. Miley's repeated demands, Debt Owner continued to place calls to Ms. Miley's Cellular Telephone in attempts to collect the Debt.

25.     Debt Owner thereafter called Ms. Miley's Cellular Telephone at least one hundred (100) times.

26.     Debt Owner called Ms. Miley's Cellular Telephone up to five (5) times per day.

27.     Upon answering at least one of Debt Owner's calls to her Cellular Telephone, Ms. Miley heard a pause before she was connected to a live representative of Debt Owner.

28.     Around this same time, Debt Owner also began placing calls to Ms. Miley's home telephone in attempts to collect the Debt.

29.     Ms. Miley answered several of Debt Owner's first few calls to her home telephone and informed Debt Owner that she had lost her job, had no money to pay Debt Owner, and demanded the Debt Owner stop calling her home telephone.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page 5 of 22

30.     Despite Ms. Miley's demands for Debt Owner to stop calling her home telephone, Debt Owner continued to place calls to Ms. Miley's home telephone number in attempts to collect the Debt.

31.     Debt Owner called Ms. Miley's Cellular Telephone and home telephone from several phone numbers, including, but not limited to: 1-888-739-1379.

32.     Sometime thereafter, the Debt was assigned, transferred, or sold to Debt Collector.

33.     Picking up where Debt Owner left off, Debt Collector began placing calls to Ms. Miley's Cellular Telephone in attempts to collect the Debt.

34.     Debt Collector also began placing calls to Ms. Miley's home telephone in attempts to collect the Debt.

35.     Debt Collector called Ms. Miley's Cellular Telephone and home telephone from several phone numbers, including, but not limited to: 1-800-580-7611.

36.     Ms. Miley has been harassed by the frequency and timing of Debt Owner's calls.

37.     All of Debt Owner's calls to Ms. Miley's Cellular Telephone were placed in attempts to collect the Debt.

38.     All of Debt Owner's calls to Ms. Miley's home telephone were placed in attempts to collect the Debt.

39.     Ms. Miley has been harassed by the frequency and timing of Debt Collector's calls.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **6** of **22**

40.     All of Debt Collector's calls to Ms. Miley's Cellular Telephone were placed in attempts to collect the Debt.

41.     All of Debt Collector's calls to Ms. Miley's home telephone were placed in attempts to collect the Debt.

### *Count 1: Violation of the Telephone Consumer Protection Act*<br>*(as against Debt Owner)*

42.     Ms. Miley re-alleges paragraphs 1-41 and incorporates the same herein by reference.

43.     The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

44.     Ms. Miley revoked consent to have Debt Owner call her Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message in or around July of 2016 when she expressly told Debt Owner to stop calling her Cellular telephone.

45.     Ms. Miley also revoked consent to be called by Debt Owner by pressing "1" to opt out of Debt Owner's collection calls.

46.     Despite this revocation of consent, Debt Owner thereafter called Ms. Miley's Cellular Telephone at least one hundred (100) times.

47.     Debt Owner did not place any emergency calls to Ms. Miley's Cellular Telephone.

48.     Debt Owner willfully and knowingly placed non-emergency calls to Ms. Miley's Cellular Telephone.

49.     Ms. Miley knew that Debt Owner called Ms. Miley's Cellular Telephone using an ATDS because she heard a pause when she answered at least one of the first few calls from Debt Owner on her Cellular Telephone before a live representative of Debt Owner came on the line.

50.     Ms. Miley knew that Debt Owner called Ms. Miley's Cellular Telephone using a prerecorded voice because Debt Owner left Ms. Miley at least one voicemail using a prerecorded voice.

51.     Ms. Miley knew that Debt Owner called Ms. Miley's Cellular Telephone using a prerecorded voice because Ms. Miley answered Debt Owner's calls which used a prerecorded voice.

52.     Debt Owner used an ATDS when it placed at least one call to Ms. Miley's Cellular Telephone.

53.     Under information and belief, Debt Owner used an ATDS when it placed at least twenty calls to Ms. Miley's Cellular Telephone.

54.     Under information and belief, Debt Owner used an ATDS when it placed at least fifty calls to Ms. Miley's Cellular Telephone.

55.     Under information and belief, Debt Owner used an ATDS when it placed all calls to Ms. Miley's Cellular Telephone.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **8** of **22**

56.     At least one call that Debt Owner placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

57.     At least one call that Debt Owner placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

58.     At least one call that Debt Owner placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

59.     At least one call that Debt Owner placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

60.     At least one call that Debt Owner placed to Ms. Miley's Cellular Telephone was made using a prerecorded voice.

61.     Debt Owner has recorded at least one conversation with Ms. Miley.

62.     Debt Owner has recorded more than one conversation with Ms. Miley.

63.     Debt Owner has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Ms. Miley, for its financial gain.

64.     Debt Owner has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Ms. Miley's Cellular Telephone, with no

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **9** of 22

way for the called party and recipient of the calls to permit, elect, or invoke the removal of the called party and recipient of the calls' cellular telephone number from Debt Owner's call list.

65.     The structure of Debt Owner's corporate policies and/or procedures permits the continuation of calls to individuals like Ms. Miley, despite individuals like Ms. Miley revoking any consent that Debt Owner believes it may have to place such calls.

66.     Debt Owner knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephones, like the calls that it placed to Ms. Miley's Cellular Telephone.

67.     Debt Owner has corporate policies to abuse and harass consumers like Ms. Miley despite having actual knowledge that they are calling the wrong person and that the called person does not wish to be called.

68.     Debt Owner's phone calls harmed Ms. Miley by trespassing upon and interfering with Ms. Miley's rights and interests in her Cellular Telephone line.

69.     Debt Owner's phone calls harmed Ms. Miley by causing her emotional distress.

70.     Debt Owner's phone calls harmed Ms. Miley by wasting her time.

71.     Debt Owner's phone calls harmed Ms. Miley by causing her stress.

72.     Debt Owner's phone calls harmed Ms. Miley by being a nuisance and causing her aggravation.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **10** of 22

73.    Debt Owner's phone calls harmed Ms. Miley by causing a risk of personal injury to Ms. Miley due to interruption and distraction.

74.    Debt Owner's phone calls harmed Ms. Miley by invading her privacy.

75.    All conditions precedent to this action have occurred.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against Debt Owner as follows:

a.   Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

b.   Awarding treble damages pursuant to 47 U.S.C. § 227 (b) (3) (C);

c.   Awarding Plaintiff costs;

d.   Ordering an injunction preventing further wrongful contact by the Defendants; and

e.   Any other and further relief as this Court deems equitable.

### *Count 2: Violation of the Telephone Consumer Protection Act*
### *(as against Debt Collector)*

76.    Ms. Miley re-alleges paragraphs 1-41 and incorporates the same herein by reference.

77.    The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **11** of 22

> any service for which the called party is charged for the call.

78.     Ms. Miley revoked consent to have Debt Owner call her Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message in or around July of 2016 when she expressly told Debt Owner to stop calling her Cellular telephone.

79.     Ms. Miley also revoked consent to be called by Debt Owner by pressing "1" to opt out of Debt Owner's collection calls.

80.     Ms. Miley's revocation of consent for Debt Owner to place calls to her Cellular Telephone revoked consent for Debt Collector to place calls to her Cellular Telephone, too.

81.     Accordingly, Debt Collector never had Ms. Miley's prior express consent to place calls to her Cellular Telephone.

82.     Despite never having Ms. Miley's prior express consent, Debt Collector thereafter called Ms. Miley's Cellular Telephone at least thirty (30) times.

83.     Debt Collector did not place any emergency calls to Ms. Miley's Cellular Telephone.

84.     Debt Collector willfully and knowingly placed non-emergency calls to Ms. Miley's Cellular Telephone.

85.     Ms. Miley knew that Debt Collector called Ms. Miley's Cellular Telephone using an ATDS because she heard a pause when she answered at least one of the first few calls from Debt Collector on her Cellular Telephone before a live representative of Debt Collector came on the line.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **12** of 22

86.     Ms. Miley knew that Debt Collector called Ms. Miley's Cellular Telephone using a prerecorded voice because Debt Collector left Ms. Miley at least one voicemail using a prerecorded voice.

87.     Ms. Miley knew that Debt Collector called Ms. Miley's Cellular Telephone using a prerecorded voice because Ms. Miley answered Debt Collector's calls which used a prerecorded voice.

88.     Debt Collector used an ATDS when it placed at least one call to Ms. Miley's Cellular Telephone.

89.     Under information and belief, Debt Collector used an ATDS when it placed at least twenty calls to Ms. Miley's Cellular Telephone.

90.     Under information and belief, Debt Collector used an ATDS when it placed at least fifty calls to Ms. Miley's Cellular Telephone.

91.     Under information and belief, Debt Collector used an ATDS when it placed all calls to Ms. Miley's Cellular Telephone.

92.     At least one call that Debt Collector placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

93.     At least one call that Debt Collector placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **13** of 22

94.     At least one call that Debt Collector placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

95.     At least one call that Debt Collector placed to Ms. Miley's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

96.     At least one call that Debt Collector placed to Ms. Miley's Cellular Telephone was made using a prerecorded voice.

97.     Debt Collector has recorded at least one conversation with Ms. Miley.

98.     Debt Collector has recorded more than one conversation with Ms. Miley.

99.     Debt Collector has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Ms. Miley, for its financial gain.

100.    Debt Collector has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Ms. Miley's Cellular Telephone, with no way for the called party and recipient of the calls to permit, elect, or invoke the removal of the called party and recipient of the calls' cellular telephone number from Debt Collector's call list.

101.    The structure of Debt Collector's corporate policies and/or procedures permits the continuation of calls to individuals like Ms. Miley, despite individuals like

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **14** of 22

Ms. Miley revoking any consent that Debt Collector believes it may have to place such calls.

102.    Debt Collector knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephones, like the calls that it placed to Ms. Miley's Cellular Telephone.

103.    Debt Collector has corporate policies to abuse and harass consumers like Ms. Miley despite having actual knowledge that they are calling the wrong person and that the called person does not wish to be called.

104.    Debt Collector's phone calls harmed Ms. Miley by trespassing upon and interfering with Ms. Miley's rights and interests in her Cellular Telephone line.

105.    Debt Collector's phone calls harmed Ms. Miley by causing her emotional distress.

106.    Debt Collector's phone calls harmed Ms. Miley by wasting her time.

107.    Debt Collector's phone calls harmed Ms. Miley by causing her stress.

108.    Debt Collector's phone calls harmed Ms. Miley by being a nuisance and causing her aggravation.

109.    Debt Collector's phone calls harmed Ms. Miley by causing a risk of personal injury to Ms. Miley due to interruption and distraction.

110.    Debt Collector's phone calls harmed Ms. Miley by invading her privacy.

111.    All conditions precedent to this action have occurred.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page 15 of 22

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against Debt Collector as follows:

    a. Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

    b. Awarding treble damages pursuant to 47 U.S.C. § 227 (b) (3) (C);

    c. Awarding Plaintiff costs;

    d. Ordering an injunction preventing further wrongful contact by the Defendants; and

    e. Any other and further relief as this Court deems equitable.

### _Count 3: Violation of the Fair Debt Collection Practices Act ("FDCPA")_
### _(as against Debt Collector)_

112.    Ms. Miley re-alleges paragraphs 1-41 and incorporates the same herein by reference.

113.    Ms. Miley is a "consumer" within the meaning of the FDCPA.

114.    The subject debt is a "consumer debt" within the meaning of the FDCPA.

115.    Debt Collector is a "debt collector" within the meaning of the FDCPA.

116.    Debt Collector violated the FDCPA. Debt Collector's violations include, but are not limited to, the following:

    a. Debt Collector generally violated 15 U.S.C. § 1692d (5) by causing Ms. Miley's home telephone and Cellular Telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass Ms. Miley.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
_Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp._
Page **16** of **22**

117.     As a result of the above violations of the FDCPA, Ms. Miley has been subjected to illegal collection activities for which he has been damaged.

118.     Debt Collector's actions have damaged Ms. Miley by causing her emotional distress.

119.     Debt Collector's actions have damaged Ms. Miley by causing her embarrassment.

120.     Debt Collector's actions have damaged Ms. Miley by causing her stress.

121.     Debt Collector's actions have damaged Ms. Miley by causing her aggravation.

122.     It has been necessary for Ms. Miley to retain the undersigned counsel to prosecute the instant action, for which he is obligated to pay a reasonable attorney's fee.

123.     All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Debt Collector as follows:

a.   Awarding statutory damages as provided by 15 U.S.C. 1692k(a)(2)(A);

b.   Awarding actual damages;

c.   Awarding costs and attorneys' fees; and

d.   Any other and further relief as this Court deems equitable.

### _Count 4: Violation of the Florida Consumer Collection Practices Act ("FCCPA") (as against Debt Collector)_

124.     Ms. Miley re-alleges paragraphs 1-41 and incorporates the same herein by reference.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
_Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp._
Page 17 of 22

125.   Debt Collector violated the FCCPA.  Debt Collector's violations include, but are not limited to, the following:

a.   Debt Collector violated Fla. Stat. § 559.72(7) by willfully communicating with Ms. Miley with such frequency as can reasonably be expected to harass Ms. Miley, by calling Ms. Miley up to five times in the same day, and by continuing to place calls to Ms. Miley's Cellular Telephone and home telephone after she demanded such calls cease and told Debt Owner that she cannot pay the Debt,  which can reasonably be expected to harass Ms. Miley.

126.   As a result of the above violations of the FCCPA, Ms. Miley has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

127.   Debt Collector's actions have damaged Ms. Miley by causing her emotional distress.

128.   Debt Collector's actions have damaged Ms. Miley by causing her embarrassment.

129.   Debt Collector's actions have damaged Ms. Miley by causing her stress.

130.   Debt Collector's actions have damaged Ms. Miley by causing her aggravation.

131.   It has been necessary for Ms. Miley to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **18** of 22

132.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Debt Collector as follows:

      a.   Awarding statutory damages as provided by §559.77, Fla. Stat.;

      b.   Awarding actual damages;

      c.   Awarding punitive damages;

      d.   Awarding costs and attorneys' fees;

      e.   Ordering an injunction preventing further wrongful contact by the Defendants; and

      f.   Any other and further relief as this Court deems equitable.

### _Count 5: Violation of the Florida Consumer Collection Practices Act ("FCCPA") (as against Debt Owner)_

133.    Ms. Miley re-alleges paragraphs 1-41 and incorporates the same herein by reference.

134.    Debt Owner violated the FCCPA.  Debt Owner's violations include, but are not limited to, the following:

      a.   Debt Owner violated Fla. Stat. § 559.72(7) by willfully communicating with Ms. Miley with such frequency as can reasonably be expected to harass Ms. Miley, by calling Ms. Miley up to five times in the same day, and by continuing to place calls to Ms. Miley's Cellular Telephone and home telephone after she demanded such calls cease and told Debt Owner that she cannot

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
_Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp._
Page 19 of 22

pay the Debt, which can reasonably be expected to harass Ms. Miley.

135.   At all times relevant hereto, Debt Owner was also vicariously liable for the actions of Debt Collector.

136.   Debt Collector violated the FCCPA.  Debt Collector's violations include, but are not limited to, the following:

    a.   Debt Collector violated Fla. Stat. § 559.72(7) by willfully communicating with Ms. Miley with such frequency as can reasonably be expected to harass Ms. Miley, by calling Ms. Miley up to five times in the same day, and by continuing to place calls to Ms. Miley's Cellular Telephone and home telephone after she demanded such calls cease and told Debt Owner that she cannot pay the Debt,  which can reasonably be expected to harass Ms. Miley.

137.   As a result of the above violations of the FCCPA, Ms. Miley has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

138.   Defendants' actions have damaged Ms. Miley by causing her emotional distress.

139.   Defendants' actions have damaged Ms. Miley by invading her privacy.

140.   Defendants' actions have damaged Ms. Miley by causing her embarrassment.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page 20 of 22

141.    Defendants' actions have damaged Ms. Miley by causing her stress.

142.    Defendants' actions have damaged Ms. Miley by causing her aggravation.

143.    It has been necessary for Ms. Miley to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

144.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Debt Owner as follows:

      a.    Awarding statutory damages as provided by §559.77, Fla. Stat.;

      b.    Awarding actual damages;

      c.    Awarding punitive damages;

      d.    Awarding costs and attorneys' fees;

      e.    Ordering an injunction preventing further wrongful contact by the Debt Owner; and

      f.    Any other and further relief as this Court deems equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, **VICTORIA MILEY**, demands a trial by jury on all issues so triable.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **21** of **22**

Respectfully submitted this **March 28, 2018**,

/s/ Michael A. Ziegler
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
13575 58th Street North, Suite 129
Clearwater, FL 33760
(p)  (727) 538-4188
(f)  (727) 362-4778
Attorneys and Trial Counsel for Plaintiff

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Miley v. Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, LLC and FMS Investment Corp.*
Page **22** of 22